THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARCUS TANNENHAUS, Defendant.

Court of General Sessions, New York County, June 17, 1931.

*Thomas C. T. Crain, District Attorney [Louis J. Capazolli, Assistant District Attorney, of counsel], for the plaintiff.*

*Le Roy Campbell, for the defendant.*

FRESCHI, J. The relations between the complainant, Philip Finklestein, and this defendant are based upon a written agreement dated April 30, 1930, by the terms of which, among other things, they mutually covenanted and agreed to form a domestic corporation to be known as the Tannenhaus & Finklestein, Inc., with $10,000 capital stock, consisting of 100 shares of $100 each, for certain business purposes more fully appearing in the agreement.

The vital part of the contract which affects this case principally is the clause designated as "8." It reads as follows: "In consideration of the terms herein, the party of the second part [Finklestein] hereby gives to the party of the first part [Tannenhaus] the sum of $1,000, payable as follows:

"$500 on the signing of this agreement and $500 on May 15, 1928, which sum shall be held in escrow by the party of the first part as security for the faithful performance on the part of the party of the second part of his duties in connection with the collection of funds of the said corporation, which sum shall be returned to the party of the second part on November 1, 1928, in the event that he withdraws from the said corporation, or at such other time as he may withdraw from the said corporation. It is further agreed that in the event that the party of the second part shall withdraw from said corporation on November 1, 1928, that then and in that event he agrees not to engage in a business similar to that of the said corporation for a period of three years from November 1, 1928."

It now appears that the only money deposited by complainant with the defendant is the first sum, $500, on the signing of the agreement, and $250 a week later. The balance of the second payment was never made.

These parties entered upon their joint venture, but nowhere is it made to appear that they ever incorporated their business. After the concern had functioned, as it would seem from the papers, as a partnership for about one month, the complainant decided to and did withdraw from the business, and he thereupon demanded the return of his $750 deposit, then in the hands of this defendant in escrow and as security for the faithful performance of certain duties on the part of the complainant prescribed in the agreement.

At this point it must be noted that in paragraph "7" of said agreement it was stipulated as follows: "It is further agreed that this agreement shall commence as of May 1, 1928, and continue for four years thereafter, with the right, however, to the party of the second part to withdraw from the said corporation, by giving thirty days' written notice commencing October 1, 1928, so that

the withdrawal shall be of November 1, 1928. In the event that such notice is not given, then this agreement shall remain in full force and effect as herein provided for."

No written notice of withdrawal was ever given by complainant, but he has testified that he made his last oral demand on the defendant on June 2, 1930, for the return of the money and with which the defendant failed to comply. These are the main facts upon which the larceny is predicated.

It might be well to mention in substance some of the other provisions of the contract in question so that a correct picture of the situation may be had as it existed when these parties entered into the agreement and finally separated.

The defendant, who had been engaged in the sale of coal, brews and other commodities at 314 Avenue U, borough of Brooklyn, N. Y., accepted the complainant as an associate therein and agreed to lease to the corporation to be formed all of the furniture, equipment and motor truck of his business for one dollar per year. Each of the parties was entitled to receive, and had actually received, a drawing allowance of fifty dollars per week, with the understanding that profits and losses were to be equally divided upon a monthly accounting. Provision was made in the contract for shares to be subscribed by each of said parties, as well as the offices to be held by them. This business was continued for one month when complainant withdrew from the company. For the purpose of this decision it is unnecessary to determine whether such withdrawal constitutes a breach of the agreement or not, save in so far only as it may be important to determine what, if any, criminal intent has been shown against the defendant. However, the parties litigated their dispute in the civil courts and the defendant recovered a civil judgment against the complainant for the amount of the money by him paid. Nowhere in the minutes of the grand jury is it made to appear where the demand by the complainant and refusal by the defendant to return the deposit took place, whether in New York county or in Kings county. Both of said parties resided in Brooklyn. There is no proof as to the place of the making of this contract. Such proof should be adduced in order to lay the jurisdictional facts clearly before the court. Where did the alleged misappropriation charged in the indictment occur? Assuming that the complainant had a right to his money, it must be established that the conversion and misappropriation took place in New York county. The record is barren on this point; and it is an elementary proposition that it is incumbent upon the People to prove that the crime was committed in New York county. I must, therefore, hold that there

is no evidence to justify the allegation in the indictment that the crime alleged was committed within the jurisdiction of this court.

It may not be amiss to pass upon the other question involved.

From all the surrounding circumstances and out of the agreement itself it must be plain that the defendant obtained lawful possession of the moneys alleged to have been stolen; and he had a right to retain such funds indefinitely to secure such rights as accrued to him under the agreement unless the complainant withdrew on November 1, 1928. At best, complainant was entitled to the return of the amount of the deposit when and if he served written notice of his withdrawal and the proper demand thereafter. The failure to give such notice under the agreement would result in its remaining in full force and effect. It seems to me that if any liability there be here on the part of the defendant toward the complainant, it is civil and not criminal in its nature.

The indictment must be and is hereby dismissed.